NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

## CAROLINE SCHMID, PETITIONER, v. STANTON FORGING COMPANY, INCORPORATED, RESPONDENT.

**Petitioner's Husband, Employe of Respondent, was Killed While Engaged at His Employment—Employe Had Deserted His Wife—Upon a Court Order He was Paying a Fixed Sum for Her Support—A Son Also Contributed to Her Support—Under the Act Prior to 1923 Amendment, Respondent Must be Held Liable to Her as a Total Dependent—Did the Act of 1923, Relating to Partial Dependency, Affect the Case?—The Act and the Proper Construction Thereof Considered at Length—Held, That Petitioner is a Total Dependent and Order Made Accordingly.**

On petition for compensation. On determination and opinion.

The undisputed facts in this case are that the decedent deserted his wife, the petitioner, some time in 1921, and that petitioner went to live with her oldest son, where she has resided since that time. The petitioner, shortly after the separation, took legal proceedings in the courts of Berks county, Pennsylvania, and as a result thereof an order for support was made by the court requiring the decedent to pay the petitioner $10 a week for the support of herself and her minor son, Carl. Decedent paid the $10 a week intermittently, finally left Pennsylvania, and, he having been located in New Jersey, extradition proceedings were taken by the authorities in Pennsylvania, and he was brought back to Berks county in that state. This was shortly after the beginning of 1925. Arrangements with regard to the arrearages under the order having been made, and the case having been transferred to the Municipal Court of Philadelphia, in which city the petitioner was living, the latter court made an order for support of $10 a week to be paid by the decedent to

the petitioner and their minor son, Carl. This $10 a week the decedent paid regularly down to the time of his death. At the time of his death the petitioner was living with her eldest son, Ernest, in Philadelphia, and the moneys received from the decedent under this order were unquestionably used in conjunction with other moneys supplied by Ernest for the support of the petitioner, her minor son, Carl, Ernest and his wife, who constituted the household.

The fact of the employment of the decedent by the respondent is admitted, as is also the accident arising out of and in the course of the employment, the death as a result of the accident and the amount of wages, to wit, $50 per week.

The sole question, therefore, involved in the case is as to whether the petitioner is entitled to compensation as a partial dependent or upon the basis of total dependency upon the decedent.

This question involves two phases: First, the condition of the law preceding the passage of the amendment of 1923, being *Pamph. L.* 1923, *ch.* 49, *p.* 101, and secondly, what change, if any, the passage of this latter act made in the law, as applied to this case.

Prior to the act of 1923 there was no provision for partial dependency of any kind. In this situation the cases of *Mees* v. *P. Ballantine & Sons, Inc.,* 37 *N. J. L. J.* 111, an Essex Common Pleas case, and *McHugh* v. *E. I. duPont de Nemours Co.,* 39 *Id.* 153, a Salem Common Pleas case, were decided. These cases undoubtedly settle the question of the actual dependency of the petitioner in this case, and are binding upon me, subject to any change made by the legislature since the decision, there seeming to be no other reported cases in this state upon the subject.

In the Mees case the wife had pursued her claim for support against her husband with due diligence, and affirmed her dependency by procuring an adjudication of a court of competent jurisdiction, holding that she was living apart from her husband for a justifiable cause, determining her dependence and fixing the amount payable to her, although

864 NEW JERSEY MISCELLANEOUS REPORTS.

N. J. Dept. Labor—Schmid v. Stanton Forging Co.

payments were not being made under the terms of the decree at the time of the husband's death. Except for the fact of the matter of payments this case and the one at bar are parallel. The court, in the Mees case, took the view that the non-payment would not nullify the decree nor adversely affect the rights of the widow under the Workmen's Compensation statute, the court saying: "There is no theoretical dependency here. The widow and child were actually dependent, although the widow was temporarily supporting both. Her effort to enforce her rights shows that she looked to her husband for her subsistence, and indicates a strong probability that his obligation would have been ultimately discharged, either voluntarily or involuntarily, but for his death. It seems to me that any other view would result in unjustly depriving of compensation for their support and maintenance those who are entitled to receive it, and I therefore find as a fact that the widow and infant child were dependents of the decedent and that the petitioner is entitled to recover.

In the McHugh case apparently there was not even an order of court upon the husband to support the wife, and no payments being made by the former to the latter voluntarily, but from the facts it was apparent that the petitioner still looked upon her husband as a means of support and that at some future time she would reeceive from him the necessary support. The court in this case said that the term "dependents" could not mean that the party must be actually receiving compensation at the time of the death of the employe, but that any person who was entitled to look for support from the employe and entitled to receive such support and had not waived rights by any acts or words, would be entitled to the compensation specified in the act. The court, therefore, found that the petitioner was an actual dependent upon the decedent and was entitled to the minimum sum allowed in the act.

In both the above cases the court allowed full compensation to the petitioner. At that time there was no provision whatsoever for partial dependency of any kind.

These cases, coupled with the facts of the present case, leave no doubt as to the actual dependency of the present petitioner. The remaining question, then, is what modification, if any, has the act of 1923 made upon these decisions as affecting the present case?

The important provision to be considered is the following quoted section of the Workmens Compensation act, being section 12, sub-section (g), as amended by *Pamph. L.* 1923, *ch.* 49, *p.* 101, the part of this section quoted below appearing on pages 106 and 107:

"(g) The term 'dependents' shall apply to and include any or all of the following who are dependent upon the deceased at the time of accident or death, namely, husband, wife, parents, step-parents, grandparents, children, step-children, grandchildren, child *in esse,* posthumous child, illegitimate children, brothers, sisters, half-brothers, half-sisters, niece, nephew. Legally adopted children shall, in every particular, be considered as natural children; provided, however, that dependency shall be conclusively presumed as to decedent's widow and natural children under sixteen years of age who were actually a part of decedent's household at the time of his death. Every provision of this act applying to one class shall be equally applicable to the other. Should any dependent of a deceased employe die during the period covered by such weekly payments, or should the widow of a deceased employe remarry during such period, the right of such dependent or of such widow to compensation under this section shall cease. It is further provided that the foregoing schedule applies only to persons wholly dependent, and that in the case of persons only partially dependent, except in the case of the widow and children, who were actually a part of the decedent's household at the time of his death, the compensation shall be such proportion of the scheduled percentage as the amounts actually contributed to them by the deceased for their support constituted of his total wages and the provision as to an eight-dollar minimum shall not apply to such compensation  *  *  *."

The construction which the respondent desires me to put upon this paragraph is that the words "except in the case of the widow and children, who were actually a part of the decedent's household at the time of his death" should be exactly the same as these words used in the fore part of the sub-section with reference to the provision as to the conclusive presumption of dependency, and after having put such construction thereon to conclude from that that the petitioner in this case must necessarily be a partial dependent.

It is important to note, however, that when first used these words apply to the question of the presumption of dependency, and, when used the second time, to the question of degree of dependency, and more important still, that when this phrase is used in the first part of the sub-section there is no comma between the words "children" and "who." It is apparent, therefore, that using these words in two different connections, and placing the comma between the words "children" and "who," indicates that the legislature meant something by placing the comma there.

To ascertain the intention of the legislature the first resort in all cases is to the natural signification of the words employed in the order and grammatical arrangement in which the framers of the instrument have placed them. 12 C. J., note 12 and p. 1301 and cases.

Statutes are to be so construed that, if possible, full force and effect shall be given to every sentence, clause and word thereof. Steel v. Freeholders of Passaic, 89 N. J. L. 609; Bogert v. Hackensack Water Co., 129 Atl. Rep. 138.

Punctuation marks are not unimportant and may influence a doubtful case, and where there is nothing out of accord therewith, either in the particular language or the general intent, they are of controlling force. Peoria First National Bank v. Farmers, &c., National Bank, 86 N. E. Rep. 417.

It is proper, in case of doubt, that punctuation, &c., should operate as an aid in the construction and interpretation of the statute. 36 Cyc. 1117, 1118.

The placing of the comma in the phrase above quoted does not render it meaningless, but, on the other hand, shows a

clear, pointed meaning. As the legislature must have meant something by putting the comma there, particularly under these circumstances, what did it mean? Read as it is written, and giving full effect to the punctuation, it is clear that the quoted phrase is a definition of the method of arriving at the compensation of persons only partially dependent but who were also actually a part of decedent's household at the time of his death. Giving it the ordinary English construction, which would make the pronoun "who" refer to the "persons only partially dependent," the provision can be seen to have the effect referred to. The only possible answer to this, it seems to me, would be that the intent of the legislature was to cover the entire subject in this act, and, therefore, it should be read as a definition of the basis of compensation for *all* partially dependent persons. As against this argument we have the fact that even if the clause be construed as excepting widows and children who were actually a part of decedent's household at the time of his death, the legislature has made no attempt to define how the basis of compensation shall be fixed in cases where such parties are only partially dependent, and, furthermore, in providing that the provision as to an eight-dollar minimum shall not apply to such compensation, has made no provision in cases where the employe receives wages of less than $8 per week. Again, it has also made no effort to make the excepted widows and children in the presumptive clause *totally* dependent, nor to define what either total or partial dependency may be. So that, where the legislature has omitted to provide for several contingencies which might arise under this one single clause and which are not remote contingencies, but evident from the act itself, it can easily be seen that it might reasonably do so so far as other items were concerned. In other words, in view of several very plain omissions, there is no presumption that the legislature attempted to cover every possible phase and contingency of the subject even so far as it might have been able to have done so.

Then, too, it is fundamental that it must be presumed that the legislature knew what the law was at the time the act

was passed, and, therefore, had it desired to expressly change the status of dependent wives or children in respect to degree of dependency, it could have done so in plain and unambiguous phraseology. The legislature clearly did not do so, but, on the contrary, used language which strongly indicates a contrary intent.

Even if the construction could be strained to the point contended for by the respondent, it would be necessary to decide further that the petitioner, under the circumstances of this case, was a partial dependent, and there is grave doubt of even this being true.

Therefore, to sustain the contention of the respondent, I must decide that the petitioner in this case, who would have been a total dependent prior to the passage of the act of 1923, is rendered a partial dependent by the provision of the statute above referred to, simply because she may not have produced proof showing that she, nor anybody else, has been spending a cent for her support except the amount paid by the decedent under the said court order. In other words, I would have to decide first that the petitioner comes in the classification of partial dependency against the clear import of the wording of the act, and secondly, having .decided this, that because the court ordered the husband to pay a sum which might have been less than the actual amount used for her support, the balance of it being furnished by her son or someone else, she is therefore dependent only to the extent of the proportion which the husband contributed under the court order. Suppose the husband had been paying nothing at all under the court order. Under respondent's theory I would have to hold that there was no actual dependency at all, and, therefore, not only overrule the prior cases above cited, but establish the doctrine that the legislature intended that the degree of a wife's dependency is to be in direct ratio with the ability of an errant husband to evade payments of support to a wife who has never relinquished or forfeited her right to that support. There seems to be no justice, reason or authority in the wording or spirit of the act for any such conclusion.

A petition having been filed in the above-stated matter praying for compensation to which the petitioner and her minor son, Carl, may be entitled by virtue of the terms and provisions of an act of the legislature of the State of New Jersey entitled "An act prescribing the liability of an employer to make compensation for injuries received by an employe in the course of the employment, establishing an elective schedule of compensation and regulating procedure for the determination of liability and compensation thereunder," approved April 4th, 1911, together with the several supplements thereto and acts amendatory thereof, and it appearing to the court that the decedent, William Schmid, was on March 12th, 1926, in the employ of the respondent in the capacity of a steam forger; that at the time of the injury the said William Schmid received as wages in said employment the sum of $50 weekly; that on the said 12th day of March, 1926, while in the course of his employment and while engaged in his work as a steam forger, the tongs under the job upon which he was working flew off and a lever thereof cut the main artery of decedent's left leg, the artery drew up into the abdomen, causing internal hemorrhages, and that decedent died on the same day, to wit, March 12th, 1926, as a result of said accident and injury; that the respondent herein had knowledge of said accident; that the petitioner, Caroline Schmid, the wife of the said decedent, was totally dependent upon the said decedent for support at the time of said injury and death, and that the said petitioner is entitled to compensation for a period of three hundred weeks commencing March 12th, 1926, at the rate of $17 per week, and in addition thereto the sum of $150 on account of funeral expenses.

Since the son, Carl, was over the age of sixteen years at the time of the accident and death of the decedent, he is not a dependent within the meaning of the act.

It is therefore on this 30th day of March, 1927, on motion of Waddington & Mathews, attorneys for the petitioner, ordered that the respondent herein pay or cause to be paid to the said petitioner the sum of $17 per week for a period of

three hundred weeks from the 12th day of March, 1926, together with the additional sum of $150 on account of funeral expenses, and that the said respondent pay or cause to be paid to the said petitioner the arrearages now due her in a lump sum.

And it is further ordered that Waddington & Mathews, the attorneys for the petitioner, be allowed a counsel fee of five hundred dollars ($500), and that the respondent, in addition to the sum above mentioned, shall pay one-half thereof and the petitioner one-half thereof.

<div style="text-align: right">

CHARLES E. CORBIN,<br>
*Deputy Commissioner.*